HAROLD G. NORMAN, JR., Plaintiff-Appellee, *v.* DARWIN P. KAL, Defendant-Appellant.

First District (3rd Division) No. 79-1300

Opinion filed August 27, 1980.

 

Paul F. Stack and Robert A. Filpi, both of Chicago (Stack & Filpi, of counsel), for appellant.

Michael L. Weissman and Robert A. Pond, both of Chicago (Boorstein & Weissman, of counsel), for appellee.

Mr. JUSTICE SIMON delivered the opinion of the court:

The circuit court was asked to register a Florida default judgment ordering a joint guarantor to reimburse his co-guarantor. Applying the Florida long-arm statute, it found that the defendant had submitted to the jurisdiction of the Florida courts by transacting business in the State. We do not agree. A guaranty signed as part of a single business transaction arranged to develop real estate outside of Florida does not submit an out-of-stater to Florida jurisdiction on a contribution claim by a co-guarantor. We reverse and grant summary judgment to the defendant.

The defendant, Darwin P. Kal, is an Illinois attorney who in the past has done business in Florida unrelated to this case. He met the brothers Ferguson in the course of that business. They were real estate developers residing in Coral Gables, Florida, and Kal agreed to become an investor in several of their projects. Along with Harold G. Norman, Jr., a Florida resident and the plaintiff in this case, Kal formed business ventures with the Fergusons to develop apartment complexes in Bellevue, Washington (to be called Yarrowood), and Sacramento, California (to be called Hidden Creek).

A certificate of limited partnership was filed in Cook County on May 9, 1974, for the Hidden Creek FDC Company. A similar certificate was filed in Sacramento County, California, on July 2, 1974. The Ferguson

brothers were listed as general partners, with the plaintiff and the defendant as limited partners. The purpose of the partnership was to develop the Hidden Creek apartment project. Each partner was to receive 25 percent of the profits and losses.

The partnership obtained construction financing through a Boston bank. The bank demanded a letter of credit to back up the loan, so the Fergusons obtained one from a Miami bank. To back the letter of credit, the Miami bank asked each of the partners to sign a personal guaranty. Both plaintiff and defendant did so. The guaranty recited that it was made in Miami, Florida, and that payments due under it were to be made at the Miami bank.

Periodic project reports were sent to the partners by the Fergusons. Kal, however, noted some discrepanices in the Fergusons' handling of Yarrowood. That venture was organized as a corporation, so Kal took advantage of a bylaw and called a shareholders' meeting at the Ferguson offices in Coral Gables. Kal notified Norman, also a shareholder in Yarrowood, by letter. In a postscript, Kal added that he and Norman should also take the opportunity to discuss the Hidden Creek project.

The Yarrowood meeting occurred around the Fergusons' swimming pool in Coral Gables in early 1975. Norman recalled that he and Kal expressed their mutual concerns about Hidden Creek. Kal could not recall such conversations, but did not dispute that they occurred. The outcome of the swimming pool meeting is not clear, but the Fergusons' real estate ventures finally collapsed. Hidden Creek went into default on the financing loan, and the Boston bank drew down on the letter of credit. The partners signed over their interests in the venture to the Boston bank in return for a release of indebtedness. The Miami bank then sued on the guaranty, naming the Fergusons, Norman and Kal, among others, as defendants. Norman crossclaimed against the Fergusons and Kal, seeking indemnification and contribution.

Kal was personally served with both the Miami bank's complaint and Norman's cross-claim. He neither appeared in the Florida court nor filed an answer. A default was entered against him on Norman's cross-claim. Norman filed a verified petition in the circuit court of Cook County seeking to register his Florida judgment. Kal answered the petition and pleaded as an affirmative defense that Florida had lacked jurisdiction over him. The circuit court granted summary judgment to Norman, and this appeal followed.

■■ The judgment of a court from another State cannot be registered and enforced under the full faith and credit clause of the United States Constitution (U. S. Const., art. IV, §1) or the Uniform Enforcement of Foreign Judgments Act (Ill. Rev. Stat. 1979, ch. 77, pars. 88-105), where service was outside the State and the foreign court did not have

jurisdiction under its State's long-arm statute or that State's long-arm statute violated due process. (*Kolman v. National Racing Affiliates, Inc.* (1965), 64 Ill. App. 2d 61, 64, 212 N.E.2d 313, 315.) We need not address the constitutional question here, for an examination of the Florida statute and accompanying case law leads us to conclude that the plaintiff did not satisfy the requirements of Florida law for obtaining jurisdiction over an out-of-State resident.

We start with the Illinois presumption that a court of general jurisdiction in rendering a judgment had proper jurisdiction over the parties. (*Evans v. Advance Schools, Inc.* (1979), 70 Ill. App. 3d 947, 950, 388 N.E.2d 1003, 1005; *Watts v. Barrett Industries Corp.* (1978), 59 Ill. App. 3d 1009, 1011, 376 N.E.2d 691, 692.) That presumption is for the benefit of the Illinois court asked to register the foreign judgment, and it is rebuttable. It operates only when the record is silent as to jurisdiction. (*Forrest v. Fey* (1905), 218 Ill. 165, 169-70, 75 N.E. 789, 791.) When the defendant resists registration of the foreign judgment and denies the jurisdiction of the foreign court, the issue has been met. The presumption is rebutted and ceases to operate. Here, the Florida decree is silent as to jurisdiction. Kal argued in the circuit court that he was justified in not appearing in Florida because the pleadings presented to him did not under Florida law adequately invoke Florida jurisdiction. With the issue so presented, we turn to Florida law and the merits of the jurisdictional issue.

The Florida long-arm statute offers the plaintiff two possible theories of jurisdiction. It states:

"Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits that person and, if he is a natural person, his personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following:

(a) Operates, conducts, engages in, or carries on a business or business venture in this state or has an office or agency in this state.

\* \* \*

(g) Breaches a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. Ann. §48.193 (West Supp. 1980).

Turning to the latter theory first, Florida law requires that the act to be performed in Florida form the basis for the plaintiff's cause of action. (*Cosmopolitan Health Spa, Inc. v. Health Industries, Inc.* (Fla. App. 1978), 362 So.2d 367, 368; *First National Bank v. Dunham* (Fla. App. 1977), 342 So.2d 1021, 1022; *Madax International Corp. v. Delcher*

*Intercontinental Moving Services, Inc.* (Fla. App. 1977), 342 So.2d 1082, 1084.) Norman's suit here is not on the guaranty, which would be paid in Florida, but rather he seeks the equitable relief of contribution and indemnification. Breach of the guaranty could be sued upon in Florida, for that is where the bank was to be paid, but contribution or indemnification among co-guarantors, each of whom was jointly and severally liable, was not an act that had to be performed in Florida. Thus, breach of a contract to be performed in Florida was not the basis of Norman's cause of action against Kal, and so the jurisdictional theory of section 48.193(1)(g) was closed to him.

■ Norman contends that since the bank would have jurisdiction over Kal on a suit based on the guaranty, there was also proper jurisdiction over Kal on all proper cross-claims. He cites Rule 1.170 of the Florida Rule of Civil Procedure (Fla. Stat. Ann., RCP Rule 1.170 (West 1978)), but that rule does not dispense with the normal requirement for personal jurisdiction. Typically of course, obtaining jurisdiction on a cross-claim is no problem—when the cross-claim defendant shows up to defend the principal suit, his presence removes any objections to jurisdiction on the cross-claim. See 6 C. Wright & A. Miller, Federal Practice and Procedure §1433, at 182 (1971).) But where, as here, the cross-claim defendant chooses not to appear at all, the jurisdictional hurdle to the cross-claim remains. By not appearing, Kal was subject to default on the bank's claim. But by not appearing he avoided surrendering his jurisdictional "defense" to Norman's cross-claim. It appears from the cases cited below that the Florida courts have restricted the scope of their long-arm statute. It would be inconsistent with this limited application of the long-arm statute to extend long-arm jurisdiction by bestowing it automatically on cross-claims which otherwise did not satisfy jurisdictional requirements.

Because the plaintiff did not have jurisdiction under section 48.193(1)(g), we must turn to Kal's business transactions in Florida to determine if there was jurisdiction under section 48.193(1)(a). Unlike Illinois, Florida, has a long-arm statute which does not extend as far as the United States Constitution allows. (*Youngblood v. Citrus Associates of the New York Cotton Exchange, Inc.* (Fla. App. 1973), 276 So.2d 505, 507-08; *Einhorn v. Home State Savings Association* (Fla. App. 1971), 256 So.2d 57, 58-59; *Bank of Wessington v. Winters Government Securities Corp.* (Fla. App. 1978), 361 So. 2d 757, 759.) For Florida to acquire jurisdiction, Kal must have conducted a general course of business activity in Florida for pecuniary benefit. (*Dinsmore v. Martin Blumenthal Associates, Inc.* (Fla. 1975), 314 So.2d 561, 564.) Only those activities out of which the cause of action arose may be considered in determining jurisdiction. (Fla. Stat. Ann. §48.193(3) (West 1969).) Thus, we need consider only Kal's activities related to the Hidden Creek guaranty. The burden is on

Norman, as the party seeking to establish jurisdiction. *Zirin v. Charles Pfizer & Co.* (Fla. 1961), 128 So.2d 594, 600.

We do not believe that Kal "purposefully availed himself of the privilege of transacting business" in Florida (*Horace v. American National Bank & Trust Co.* (Fla. App. 1971), 251 So.2d 33, 37), because Kal was not transacting business within the meaning of the long-arm statute. A single, isolated contact with Florida, even one for pecuniary benefit, is not enough to trigger Florida long-arm jurisdiction. (*Dinsmore,* at 564; *Odell v. Signer* (Fla. App. 1964), 169 So.2d 851, 853; *Einhorn,* at 58; *Lyster v. Round* (Fla. App. 1973), 276 So. 2d 186, 188.) The signing of a single guaranty as part of an investment in an Illinois limited partnership did not constitute a general course of business activity in Florida.

Norman characterizes Kal's Florida contacts as concerted and consistent, citing *Bank of Wessington* and *Citizens State Bank v. Winters Government Securities Corp.* (Fla. App. 1978), 361 So. 2d 760. But those cases involved, respectively, 10 and 14 sales of securities. Here, there was but a single guaranty. In addition, the securities in those cases were sold to Florida residents. Here, the guaranty was given to a Florida bank, to be sure, but the object of the entire venture was in California. While Kal did travel to Florida to discuss Hidden Creek with Norman and the Fergusons, those discussions did not constitute the transaction of business. Both Kal and Norman were only limited partners. Kal could express his concerns to the Fergusons, but control of the partnership remained in their hands. Likewise, the activities of the partnership in transacting business in Florida will not be imputed to Kal, whose association was only that of a limited partner. (Compare *Horace,* where the acts of a corporation were imputed to the president who was the major shareholder to support jurisdiction under a business transactions theory.) Kal's activities did not constitute transacting a business or business venture under the Florida long-arm statute.

The circuit court incorrectly found that there was jurisdiction to support the Florida default judgment. As a matter of law, the Florida default could not be registered in Illinois. Summary judgment in favor of Norman is reversed, and as no material issue of fact remains, summary judgment in favor of Kal is granted on the issue of registration of the Florida judgment in Illinois.

Judgment reversed.

McGILLICUDDY, P. J., and McNAMARA, J., concur.